566 A.2d 120

Troy Edward DAFF

v.

STATE of Maryland.

No. 119, Sept. Term, 1988.

Court of Appeals of Maryland.

Nov. 29, 1989.

Arnold D. Bruckner and Kenneth E. McPherson (Bruckner & Bruckner, P.A., on brief), Riverdale, for petitioner and cross-respondent.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent and cross-petitioner.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

McAULIFFE, Judge.

Troy Edward Daff was found not guilty of the assault and battery of two persons. The State filed an order of appeal, but before its right to do so could be challenged, it dismissed the appeal. The State then filed new charges against Daff for the same offenses. Daff procured the dismissal of those charges on double jeopardy grounds, and the State again appealed. The Court of Special Appeals reversed. *State v. Daff,* 77 Md.App. 16, 549 A.2d 25 (1988). We granted certiorari.

Ordinarily, the common law doctrine of double jeopardy, embracing as it does the principles supporting the ancient plea of *autrefois acquit,* prohibits a second prosecution following an acquittal of the same offense. The question raised by this case involves the circumstances under which the entry of a verdict of not guilty will result in the application of those principles.

Daff was originally charged in the District Court of Maryland for Anne Arundel County. The case was removed to the Circuit Court for that county on 8 May 1987, by Daff's demand for a jury trial. On 22 June, Daff's

attorney entered his appearance in the case, and on 18 August the defendant filed a written plea of not guilty and an election to be tried by the court.

The matter came on for trial on the scheduled date of 4 September, before Judge James C. Cawood, Jr. When the case was called, the prosecutor asked that the names of the prosecuting witnesses be called. When neither witness responded, the prosecutor inquired of the court whether the file reflected that witness subpoenas had been served on the complainants. He was informed that the witness subpoenas had not been issued, and that there was no request for their issuance in the court file. The prosecutor said that notes in his file indicated that his office had forwarded to the clerk of the court a written request for the issuance of the subpoenas. The prosecutor could not explain why the request was not in the court file, nor why it had not been acted upon by the clerk. He requested a postponement of the trial.

Judge Cawood then questioned the prosecutor concerning any attempts the State's Attorney's office might have made to contact the witnesses between the time the trial date was established in May and the actual trial date in September. Learning that there had been no recent attempts to contact the witnesses, and no follow-up inquiry to determine whether the subpoenas had been issued or served, Judge Cawood denied the continuance.[1] The following colloquy occurred:

COURT: Okay. All right, well, there may have been a request to put it on the computer, but there was never a summons issued and frankly, there hasn't been any follow-up to it. I think there is some duty to try and follow these things up. I'll deny the postponement ... I think he was here and ready to proceed ... should have been

1. The record is silent as to whether Judge Cawood was authorized, as the designee of the county administrative judge, to grant a change of the trial date. *See* Maryland Rule 4–271(a). The parties assumed that he was, and we shall do likewise.

followed up. If you can't proceed with the case, are you going to nolle pros it?

**DEFENSE ATTORNEY:** We enter a plea of not guilty, Your Honor. I'd like to be tried before Your Honor.

**PROSECUTOR:** Well, the State would not proceed at this time, Your Honor.

**COURT:** All right, we'll enter a nolle pros in the two cases then.

**PROSECUTOR:** The State does not move to nolle pros the cases, Your Honor.

**COURT:** Oh, the State doesn't move....

**PROSECUTOR:** No, Your Honor.

**COURT:** All right, then I'm going to enter a finding of not guilty.

The docket entry for that day reads:

September 4 Court trial (Judge Cawood), Plea Not Guilty, Counsel heard, State's request for a postponement, Denied. Finding: NOT GUILTY.

The prosecutor filed an order for appeal. Two months later, following a discussion between the prosecutor and a representative of the Attorney General's office, the State dismissed the appeal. At the same time, the State filed a Bill of Information in the Circuit Court for Anne Arundel County, charging Daff with the same two offenses. Daff moved to dismiss the charges, relying on the double jeopardy protections of the common law of Maryland and of the Fifth and Fourteenth Amendments to the United States Constitution. Judge Bruce C. Williams granted Daff's motion, and the State appealed. The Court of Special Appeals reversed, concluding that jeopardy had not attached when Judge Cawood entered the finding of not guilty, and that the prosecution was therefore free to renew the charges. *State v. Daff, supra,* 77 Md.App. at 19–20, 549 A.2d 25. We granted certiorari, and we reverse the Court of Special Appeals and direct that the judgment of the trial court be affirmed.

 Double jeopardy protections exist in this State not only by virtue of the Fifth and Fourteenth Amendments to the United States Constitution, but also by the continued existence of the common law of double jeopardy. *Wright v. State*, 307 Md. 552, 561–62, 515 A.2d 1157 (1986); *Brooks v. State*, 299 Md. 146, 472 A.2d 981 (1984); *Ward v. State*, 290 Md. 76, 427 A.2d 1008 (1981); *Block v. State*, 286 Md. 266, 407 A.2d 320 (1979); *Pugh v. State*, 271 Md. 701, 319 A.2d 542 (1974). As the United States Supreme Court noted in *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977):

> Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that "[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

Similarly, a defendant acquitted at trial may not be retried on the same offense, even when the acquittal is "based upon an egregiously erroneous foundation." *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962). *See also Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978); *Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

In discussing the common law precedent for these statements of constitutional law, this Court said in *State v. Shields*, 49 Md. 301, 303 (1878):

> It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury. 2 Hale's P.C. 310; 2 Hawk's P.C. Book

2, ch. 47, sec. 12; 3 Whart.Cr.Law, sec. 3221; 1 Bishop's Cr.Law, secs. 992, 993. This cardinal rule has been clearly and definitely settled in England, and has never been modified by legislation there, nor in any other State in this Union, nor indeed, so far as we are aware, in any other country where trial by jury under the common law prevails.

The defense of former acquittal was formerly raised by the plea in bar of *autrefois acquit,* which was addressed in 4 *Blackstone's Commentaries* at 355:

> [T]he plea of *autrefoits acquit,* or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence. And hence it is allowed as a consequence, that when a man is once fairly found not guilty upon any indictment or other prosecution, before any court having competent jurisdiction of the offence, he may plead such acquittal in bar of any subsequent accusation for the same crime.

The principle embodied in the plea of *autrefois acquit* has been broadly interpreted. A verdict of not guilty, even though not followed by a judgment on the docket, is sufficient to invoke the protection. *Pugh v. State, supra,* 271 Md. at 706–07, 319 A.2d 542. Once a trial judge has intentionally rendered a verdict of not guilty, a subsequent change of mind is prohibited even though the judge may be convinced, even moments later, that the verdict was erroneous. *Id.* at 707, 319 A.2d 542; *Brooks v. State, supra,* 299 Md. at 155, 472 A.2d 981. The court entering the acquittal must have basic subject matter jurisdiction, but procedural errors will not affect the efficacy of the acquittal for jeopardy purposes. 2 Hawkins, *Pleas of the Crown* 521 (8th ed. 1824); 2 Hale's *Pleas of the Crown* 247 (1st Am.Ed. 1847). *See Block v. State, supra,* 286 Md. at 273–74, 407 A.2d 320 (improper or defective exercise of jurisdiction does not deprive an acquittal of its finality); *Parojinog v. State,* 282 Md. 256, 384 A.2d 86 (1978) (although juvenile judge lacked authority under the statute

and rules to enter a verdict when he did, the verdict is final for jeopardy purposes because the court had subject matter jurisdiction and jurisdiction over the respondent). An acquittal entered after trial on a fatally defective indictment is nevertheless effective to bar a subsequent prosecution for the same offense if the court had jurisdiction of the cause and of the party. *Benton v. Maryland,* 395 U.S. 784, 796–97, 89 S.Ct. 2056, 2063–64, 23 L.Ed.2d 707 (1969); *United States v. Ball,* 163 U.S. 662, 669–70, 16 S.Ct. 1192, 1194–95, 41 L.Ed. 300 (1896); *Block v. State, supra,* 286 Md. at 272–73, 407 A.2d 320. A previous judgment of acquittal upon a former indictment for the same offense on the ground that prosecution was barred by the statute of limitations, though in error, is a bar to a subsequent prosecution. *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). A "dismissal" on the ground of insufficiency of evidence is an acquittal for jeopardy purposes. *Sanabria v. United States, supra,* 437 U.S. at 71–73, 98 S.Ct. at 2182–84.

In the instant case, the Circuit Court for Anne Arundel County had jurisdiction over the subject matter and over the defendant. The case had been called for trial, and the State's request for postponement had been denied. If we assume that the trial judge erred in denying the State's request, or even that the judge was not the designee of the administrative judge authorized by the rules to grant a postponement, neither of these matters would affect the finality of an acquittal thereafter entered on the ground of insufficiency of the evidence.

The State has also suggested that the case should not have proceeded to disposition by the judge because the defendant was entitled to a jury trial and that right had not been waived in the manner required by Rule 4–246. Again, this is a procedural deficiency, about which the defendant might have complained, but it does not affect the finality of the acquittal thereafter entered by a judge having jurisdiction over the matter.

When the postponement was denied, the State had two options—it could have proceeded to trial, or it could have exercised its right to enter a *nolle prosequi.*[2] The trial judge assumed the State would take the latter course. Instead, the prosecutor made it clear that he would neither enter the *nolle prosequi* nor offer any evidence in the case.

. The trial judge, having previously ruled that the case was going to proceed to trial, and having offered the prosecutor a reasonable opportunity to abort the proceedings if he did not elect to proceed, thereupon entered the finding of not guilty on the perfectly obvious ground that the evidence offered by the State was insufficient.

The State argues that instead of proceeding with the trial, the trial judge should have dismissed the charges "for lack of prosecution." There are two problems with this argument. First, this Court has never held that a trial judge in this State has the authority, in the absence of a violation of Rule 4–271 or a violation of a constitutional guarantee of a speedy trial, to dismiss a criminal case for lack of prosecution. Chief Judge Murphy, writing for the ·Court of Special Appeals in *State v. Hunter,* 10 Md.App. 300, 270 A.2d 343 (1970), discussed the difference between federal and State rules dealing with the subject, and con-cluded that dismissal on that ground was "beyond the power of the court." *Id.* at 305, 270 A.2d 343. This Court granted certiorari, but because of other developments in the case, later dismissed the writ as improvidently granted. *Hunter v. State,* 263 Md. 17, 278 A.2d 608 (1971). The Court stated, however, that its action was not to be taken as inferentially approving the holding of the Court of Special

---

**2.** Ordinarily, the entry of a *nolle prosequi* terminates the running of the 180 day period for trial required by Rule 4–271. *State v. Glenn,* 299 Md. 464, 474 A.2d 509 (1984); *Curley v. State,* 299 Md. 449, 474 A.2d 502 (1984). Even if this case were held to be within the exception to that general rule, sufficient time remained for the State to bring new charges and to proceed to trial. Concerning the effect of the entry of a *nolle prosequi* for purposes of jeopardy, see *Ward v. State,* 290 Md. 76, 427 A.2d 1008 (1981).

Appeals, and that the issue remained open for future consideration. *Id.* at 19, 278 A.2d 608. We have had no subsequent opportunity to consider the issue.[3]

If the trial judge had no authority to dismiss the action for lack of prosecution, acceptance of the State's position would lead to the rather extraordinary result that the State could always secure a postponement simply by refusing to proceed. The court, in this situation, cannot force the State to enter a *nolle prosequi.* If the court is similarly without authority to dismiss the case for lack of prosecution, and, as the State maintains, cannot enter a binding verdict of acquittal, the State would be able to cause an impasse that would necessarily result in a delay until such time as the State felt it was ready to proceed. That result would be untenable. The court has the authority to control its docket, and it may force the State to proceed to trial or to enter a *nolle prosequi* when the case is called for trial on a regularly assigned trial date. Failure of the State to produce any evidence at the trial will necessarily result, as it did here, in an acquittal.

The second problem inherent in the State's argument that the court should have dismissed the case for lack of prosecution is that, assuming the court had the authority to do so, the decision as to whether to dismiss or whether to require a trial would be one within the discretion of the trial judge. For the reasons earlier discussed, even an egregious error in the exercise of that discretion would not affect the finality of a judgment of acquittal entered after a decision to proceed to trial.

The State's final argument, which the Court of Special Appeals found persuasive, is that an acquittal offers no protection unless jeopardy had attached before the acquittal was entered, and that jeopardy had not attached here be-

---

3. In the case of *In Re Darryl D.,* 308 Md. 475, 478–80, 520 A.2d 712 (1987), this Court discussed, but did not decide, whether a juvenile judge possessed authority to dismiss proceedings for lack of prosecution.

cause no witness had been sworn and no evidence had been received. This argument, largely constructed upon language growing out of cases involving a separate but related problem of jeopardy without verdict, is unpersuasive when applied to the problem of jeopardy after a verdict of acquittal under the facts of this case. The concept of jeopardy following a mistrial or other termination of proceedings before verdict arose after the common law of *autrefois acquit* had been firmly established. *Crist v. Bretz*, 437 U.S. 28, 33–35, 98 S.Ct. 2156, 2159–61, 57 L.Ed.2d 24 (1978). *And see* the dissenting opinion of Justice Powell, *id.* at 40–48, 98 S.Ct. at 2163–67, and *Ward v. State, supra,* 290 Md. at 85–91, 427 A.2d 1008.

The language relied upon by the State in connection with the question of when jeopardy attaches has largely evolved from cases dealing with mistrials or terminations other than by verdicts of guilty or not guilty. *See, e.g., Crist v. Bretz, supra; Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Even under that line of cases, it is far from clear that the Supreme Court would hold that jeopardy had not attached in the instant case, within the meaning of the former acquittal protection of the Fifth Amendment. Although stating the rule in general terms in *Serfass v. United States, supra,* 420 U.S. at 388, 95 S.Ct. at 1062, that "[i]n a nonjury trial, jeopardy attaches when the court begins to hear evidence," [4] the Court made it clear that the basic test of initial jeopardy is whether the defendant has been "put to trial before the trier of the facts, whether the trier be a jury or a judge," and thereby

---

4. In *Blondes v. State,* 273 Md. 435, 444–46, 330 A.2d 169 (1975), we pointed out that the "normal rule" as to when jeopardy attaches in a court trial was "when the judge begins to hear or receive evidence," but that there was a minority view that jeopardy attaches in such a case when the first witness is sworn. Although the Supreme Court chose the language of the "normal rule" in its opinion in *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975), it later said, citing *Serfass* as authority, that "[i]n nonjury trials jeopardy does not attach until the first witness is sworn." *Crist v. Bretz,* 437 U.S. 28, 37 n. 15, 98 S.Ct. 2156, 2162 n. 15, 57 L.Ed.2d 24 (1978).

"subjected to the risk of conviction." *Id.* at 388–92, 95 S.Ct. at 1062–64. When the ruling, as in *Serfass,* is made at a pre-trial hearing and the defendant is never subjected to the risk of conviction, jeopardy has not attached. In the case before us, however, the defendant was specifically "put to trial before the trier of the facts" and "subjected to the risk of conviction." The State was given an opportunity to present evidence at the trial. Had that evidence been sufficient, the defendant would have been convicted. The trial ended abruptly only because the State introduced no evidence. With the subsequent entry of an acquittal, the principles underlying the plea of *autrefois acquit* became fully applicable. This interpretation of when jeopardy attaches, limited to the situation where a verdict is entered after trial, is entirely consistent with the teaching of *Serfass* that courts are to avoid mere technicalities, or "rigid, mechanical" rules, in favor of "an attempt to impart content to an abstraction." *Id.* at 391, 95 S.Ct. at 1064.

In any event, we reach the same conclusion under our interpretation of the common law of double jeopardy as it exists in this State. The plea of *autrefois acquit* was available when an acquittal followed a trial. It made no difference that the State's evidence may have been woefully deficient at that trial. Indeed, one may assume that the acquittal usually reflected the inadequacy of the State's case. We think the defense is no less available when the State's case has been completely deficient than when the State's case has been only partially deficient. A trial may be held although a defendant elects to present no evidence. Similarly, a trial may be held notwithstanding the refusal of the State to participate. Daff's trial was held as scheduled,

and he was acquitted by reason of the insufficiency of the State's evidence. Retrial is barred.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.